IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| SRINIVAS GINJUPALLI,<br><br>        *Plaintiff,*<br><br>vs.<br><br>CHAMELEON FINANCE; LAKSHMI<br>FINANCE CENTER; SUMMIT FUSION<br>LLC; ELIZIR CO., LIMITED; LUXURY<br>COLLECTION INC; and DOES 1–100,<br><br>        *Defendants.* | Case No. 9:25-cv-290 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### Preliminary Statement

1.      This case arises from a sophisticated, ongoing "pig-butchering" fraud enterprise that used deceptive communications, a sham online "brokerage," and money-mule accounts at U.S. financial institutions to steal more than $3.7 million from Plaintiff.  The enterprise—comprising the operators of Chameleon Finance and Lakshmi Finance Center (LFC), along with downstream money mules and account holders—is an association-in-fact that has for months targeted U.S. victims through encrypted messaging applications and social-engineering scripts, inducing repeated interstate wire transfers into accounts at U.S. banks and exchanges. The scheme involved a pattern of wire fraud in violation of 18 U.S.C. § 1343 and constitutes racketeering activity under 18 U.S.C. § 1961(1). Plaintiff brings claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d), as well as under Georgia law for fraud, fraudulent inducement, conversion, and constructive trust.  These fraudulent platforms are

1

designed to look and function like a real trading platform.[1]  They often show artificial gains designed to keep victims engaged and to induce them to deposit more funds.

2.      In this case, Plaintiff was induced by Defendants into believing that he was depositing funds onto a legitimate cryptocurrency trading exchange.  The scheme used complex and sophisticated social engineering to induce Plaintiff to make deposits.  Defendants fabricated realistic trading interfaces, "escrow" pretexts, and unlawful withdrawal restrictions to coerce further deposits and block withdrawals.  The perpetrators directed Plaintiff's wire transfers into bank accounts belonging to Summit Fusion LLC and ELIZIR Co., Limited at various banks, including Deutsche Bank Trust Company Americas (located within the Southern District of New York).  Plaintiff seeks damages and equitable relief, conversion, constructive trust, and injunctions securing traceable proceeds.

## Parties

3.      Plaintiff is a resident of Martinez, Columbia County, Georgia.

4.      Chameleon Finance, Inc. is a Washington D.C. corporation with its principal place of business in Washington, D.C.

5.      Lakshmi Finance Center is a business association of unknown form that operated the fraudulent investment platform and communications channels described herein.

6.      ELIZIR Co., Limited is believed to be a foreign entity that held accounts at Deutsche Bank Trust Company Americas and International Bank of Chicago that received funds traceable to Plaintiff.

7.      Summit Fusion LLC is believed to be a domestic entity that held accounts at Bank

---

[1] https://www.chameleonfinance.com/#/home (last accessed Oct. 16, 2025); https://www.lakshmifinance.org.in/ (last accessed Oct. 16, 2025).

Irvine that received funds traceable to Plaintiff.

8.    Luxury Collection Inc. is believed to be a domestic entity that held accounts at TD Bank, N.A., that received funds traceable to Plaintiff.

9.    John Does 1–100 are as-yet-unknown individuals and entities who operated the platform, controlled communications, or received, transferred, or dissipated Plaintiff's funds. These persons are Chameleon Finance, Lakshmi Finance Center, ELIZIR Co., Limited, and Summit Fusion LLC's co-conspirators.

Jurisdiction and Venue

10.    This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under 18 U.S.C. §§ 1962(c) and (d). The Court also has supplemental jurisdiction over Plaintiff's Georgia-law claims under 28 U.S.C. § 1367. Alternatively, the Court has jurisdiction under 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000 exclusive of interest and costs, and Plaintiff is a citizen of Georgia while Defendants are citizens of other states or foreign entities; the citizenship of Doe defendants is disregarded.

11.    Personal jurisdiction and venue are proper in this District under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(3) because RICO provides for nationwide service of process and because there is no district otherwise available under section 1391(b)(1) or (2).  Under Federal Rule of Civil Procedure 4(k) and the nationwide service of process and venue provisions of RICO, the Court has venue and jurisdiction over foreign defendants to the extent consistent with the Due Process Clause of the Fifth Amendment.  By targeting victims in the United States and by conspiring with money mules residing in the United States, each Defendant purposefully availed himself, herself, or itself of the laws of the United States such that personal jurisdiction does not offend traditional notion of fair play or substantial justice. *See Busch v. Buchman, Buchman &*

*O'Brien, L. Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).

## Factual Allegations

12.     Beginning in April 2025, an individual messaged Plaintiff inviting him to join her group to obtain stock advice.  When Plaintiff joined, an individual using the name "Casey Ross" with an alluring profile picture associated with Defendant Lakshmi Finance Center ("LFC") contacted Plaintiff on WhatsApp.

13.     After gaining Plaintiff's trust, Defendants induced Plaintiff to open an account at "Chameleon Finance/Chameleon Exchange."[2]  Plaintiff underwent a real-seeming "know your customer" or KYC process and set up an account.  The website displayed his account information in a manner designed to give the appearance of a legitimate trading platform:



---

[2] https://www.chameleonfinance.com/#/home.

4



14.     Over the subsequent weeks, LFC and Chameleon operators made specific representations to Plaintiff, including:

- that Lakshmi Finance Center operated a legitimate investment group and training service with verified "VIP" members and regulated brokerage relationships;

- that Plaintiff could open a legitimate trading account at "Chameleon Finance/Chameleon Exchange" after a "KYC" onboarding process;

- that the Chameleon platform displayed true balances, profits, and holdings;

- that Plaintiff could readily withdraw funds subject only to routine commissions and fees; and

- that any temporary withdrawal restrictions reflected "escrow," "third-party approvals," or "service fees" required by the platform or regulators.

5

15.     To build trust, the perpetrators allowed Plaintiff to make small withdrawals (under $10,000).  The perpetrators used documents that appeared to be government records to persuade Plaintiff that their investment platform was legitimate:



**Financial Crimes Enforcement Network**
**Department of the Treasury**

MSB Registration Status Information

Date: 02/22/2025

Information contained on this transcript has been provided to FinCEN by the money services business registrant. FinCEN does not recommend, approve, or endorse any business that registers as a money services business. Any such claim and similar claims are false and may be part of a scam or attempt to deceive consumers.

The MSB Registrant Search Web page, which is updated on a weekly basis, contains entities that have registered as Money Services Businesses (MSBs) pursuant to the Bank Secrecy Act (BSA) regulations at 31 CFR 1022.380(a)-(f), administered by the Financial Crimes Enforcement Network (FinCEN).

Information contained on this site has been provided by the MSB registrant.  FinCEN does not verify information submitted by the MSB. Information provided on this site reflects only what was provided directly to FinCEN.  If an error or incomplete information is detected on this site, the registrant should follow the appropriate instructions for correcting a Registration of Money Services Business (RMSB) form.

MSB Registration Number: 31000293091657
Registration Type: Initial Registration
Legal Name: Chameleon Finance INC.
DBA Name: Chameleon Finance

Street Address: 4301 Connecticut Ave NW
City: Washington, D.C.
State: DISTRICT OF COLUMBIA
Zip: 20008

MSB Activities:
        Check casher (Including traveler's and money orders), Dealer in foreign exchange, Issuer of money orders, Issuer of traveler's checks, Money transmitter,
        Seller of money orders, Seller of prepaid access, Seller of traveler's checks
States of MSB Activities:
        Alabama, Alaska, American Samoa, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District Of Columbia,
        Federated States Of Micronesia, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas,
        Kentucky, Louisiana, Maine, Marshall Islands, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,
        Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands,
        Ohio, Oklahoma, Oregon, Palau, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee,
        Texas, Utah, Vermont, Virginia, Virgin Islands, US, Washington, West Virginia, Wisconsin, Wyoming
All States & Territories & Foreign Flag:  All States/Territories, Foreign

Number of Branches:  0
Authorized Signature Date: 02/19/2025
Received Date: 02/19/2025



Undersigned counsel's investigation indicates that these supposed government documents were fabricated.

16.     Initially, Plaintiff transferred approximately $5,000 at a time from his Robinhood account eventually totaling approximately $100,000.

17.     After the Chameleon website displayed substantial (and fictional) profits, eventually, the LFC perpetrators persuaded Plaintiff to deposit funds directly into his supposed Chameleon Finance account from Plaintiff's Bank, SoFi, N.A.  The deposits were accomplished through electronic funds transfers from Plaintiff's bank account with SoFi to recipient entities called Luxury Collection Inc.; Summit Fusion LLC; and ELIZIR Co., Limited, using a supposed third-party wire transfer service called "C2C services."

18.     Relying on Defendants' representations, Plaintiff began depositing funds, first by transferring approximately $5,000 increments from his Robinhood account, eventually totaling

approximately $100,000. Thereafter, Chameleon/LFC directed Plaintiff to deposit larger sums directly via wire transfers using a purported "C2C services" rails into named recipients Luxury Collection Inc., Summit Fusion LLC, and ELIZIR Co., Limited. Between approximately May and September 2025, Plaintiff executed at least 14 interstate wire transfers totaling approximately $3.7 million.

19.    Ultimately, Plaintiff made 14 wire transfers to Defendants totaling about $3.7 million.  Defendants incentivized Plaintiff to make additional transfers using sophisticated social-engineering techniques through which Plaintiff could achieve increasing VIP "status" with LFC:



| Membership level | Starting capital | Weekly trading frequency | Profit target | Commission charged after profit | Trading strategy |
|---|---|---|---|---|---|
| VIP1 Pioneer Member | 500K | 3 times | 70%+ | 10% | Basic Optimized Investment Strategy<br>1 stock market strategy per week from TradeGenius AI 4.0, targeting ≥ 20% profit<br>2 cryptocurrency strategies per week from TradeGenius AI 4.0, targeting ≥ 60% profit |
| VIP2 Elite Member | 3M | 4 times | 200%+ | 8% | Basic Optimized Investment Strategy<br>2 stock market strategy per week from TradeGenius AI 4.0, targeting ≥ 35% profit<br>2 cryptocurrency strategies per week from TradeGenius AI 4.0, targeting ≥ 60% profit |
| VIP3 Noble Member | 5M | 5 times | 500%+ | 6% | Basic Optimized Investment Strategy<br>2 stock market strategy per week from TradeGenius AI 4.0, targeting ≥ 45% profit<br>3 cryptocurrency strategies per week from TradeGenius AI 4.0, targeting ≥ 80% profit<br>Receive professional guidance from Professor Jonathan Dale Benton |

LAKSHMI FINANCE CENTER
——VIP Membership Program

● Overview:
At Lakshmi Finance Center (LFC), we offer a tiered VIP Membership Program designed to serve sophisticated and high-net-worth individuals seeking strategic access to digital asset investment opportunities, wealth management solutions, and institutional-grade insights powered by AI.

20.    Upon information and belief, the recipient entities and their beneficial owners acted as "money mules" to receive, layer, and dissipate proceeds of the fraud.

21.    For example, more than 50 "VIP" members appeared to be members of the Whatsapp group to which Defendants invited Plaintiff.  These supposed "VIP" members described selling their homes and cars to invest more with Chameleon and LFC.  On information and belief, the phone numbers were spoofed by Defendants and the messages were generated either by bots or by the perpetrators, all to help build social proof and gain Plaintiff's trust.

22.    Plaintiff first became alerted to the fraudulent nature of the scheme when he attempted to withdraw funds.  Initially, Plaintiff was able to make small withdrawals of $10,000 or less. But when he attempted to make larger withdrawals to pay his son's tuition, suddenly the "account" became restricted.  In late September 2025, Chameleon insisted that Plaintiff make additional deposits to cover certain commissions and service fees and set an arbitrary deadline of October 15, 2025, for Plaintiff to make additional deposits.  Defendants' conduct raised red flags for Plaintiff.  After all, why would Chameleon require additional deposits when Plaintiff's account showed a balance of millions of dollars?

23.    After Defendants' September conduct insisting on additional deposits aroused Plaintiff's suspicion, Plaintiff promptly and diligently sought out counsel.  Counsel's investigation raised additional red flags.  The Chameleon website did not publish the terms of service justifying the additional fees or the inability for Plaintiff to withdraw funds from his account.  Neither Chameleon nor LFC appears to have a physical location, phone number, or mailing address.  Chameleon's only point of contact was an email address: Service@chameleonfinance.com.

24.    Nonetheless, Plaintiff through counsel sent a demand letter insisting Chameleon either release Plaintiff's funds or provide contractual or regulatory justification for limiting Plaintiff's ability to withdraw funds.  Counsel received an email response embedded with basic Chinese characters (for the date and time) that acknowledged Plaintiff's funds were being held "in escrow" but failing to identify contractual terms of service or other legal justification.  After another unproductive email exchange, counsel grew suspicious that the email responses were being generated by a bot or some other form of generative artificial intelligence.  Counsel sent an automated authenticity test, which the email account failed.  As its response to the verification question, "What's your favorite color?," the email received back was non-responsive and

indicative of non-human activity.

25.    Plaintiff sprang into action, through counsel sending fraud-notice letters to the banks that sent and received wire transfers the very same day Chameleon's support email account failed the bot test.  These letters—sent by email and certified mail to the banks that received the fraudulent wire transfers—notified the banks that they were holding proceeds from bank fraud and wire fraud and demanded the  immediate reversal of  the wire transfers and freezing of the assets in the accounts.

26.    Plaintiff also submitted an IC3 form to the Federal Bureau of Investigations and is cooperating with law enforcement.

27.    Thanks to Plaintiff's prompt action, one wire transfer was successfully stopped. But to date, Plaintiff has not received further responses from the remaining banks or meaningful responses from Chameleon or LFC.

28.    Defendants used a playbook common to pig-butchering schemes. After inducing larger deposits, Chameleon began blocking withdrawals and imposing new, ad hoc conditions— such as demands for additional deposits to "unlock" funds, "pay taxes," "settle fees," or to satisfy "escrow approvals"—not disclosed in any legitimate terms of service. In late September 2025, Chameleon demanded further deposits by an arbitrary deadline and ignored requests to identify contractual or regulatory bases for the restrictions. When Plaintiff's counsel wrote to the platform's support address, responses embedded with Chinese characters claimed that Plaintiff's funds were held "in escrow" but did not cite any operative contract or law. A simple authenticity test was not answered coherently, indicating bot or AI-generated replies.

29.    Despite these efforts, neither Defendants nor the recipient banks have returned Plaintiff's funds.

30.     The foregoing was not an isolated event.  LFC's WhatsApp group featured dozens of purported "VIP" members, consistent with a broader enterprise targeting multiple victims over a substantial period. Defendants' communications and the Chameleon website were designed to induce and facilitate repeated interstate wires into mule accounts, followed by scripted "fee" demands and blockages to extract further funds.  This enterprise has the structure, purpose, and longevity necessary to constitute an association-in-fact enterprise

### RICO Allegations

#### *The RICO Enterprise*

31.     Defendants formed and conducted an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Enterprise"), consisting of:

- the operators and controllers of "Chameleon Finance/Chameleon Exchange," who designed and administered the sham trading platform and communications;

- the operators and promoters associated with "Lakshmi Finance Center," including WhatsApp group admins, scripted "signal" providers, and faux "VIP" accounts;

- the recipient entities and account holders (including ELIZIR Co., Limited; Summit Fusion LLC; and Luxury Collection Inc.) that received, layered, and dissipated proceeds of the fraud through their accounts and onward transfers; and

- other as-yet-unidentified individuals and entities who participated in onboarding, payment processing, platform hosting, communications, and money flows.

32.     The Enterprise had a common purpose: to defraud victims through a sham platform, induce interstate wire transfers, and convert those funds to the Enterprise's benefit. The Enterprise functioned as a continuing unit with roles, relationships, and division of labor, including victim acquisition and grooming (LFC), front-end platform operation (Chameleon), and receipt/layering of funds (mule accounts). The Enterprise operated continuously for many months, victimizing

11

Plaintiff and numerous other persons across state lines, including many victims in California.

### *Pattern of Racketeering Activity*

33.    Defendants, through the Enterprise, engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of multiple acts indictable as wire fraud under 18 U.S.C. § 1343, including:

- interstate electronic communications via WhatsApp and email to induce deposits (specific dates and message strings to be filed under seal);

- website transmissions via the Chameleon platform displaying fabricated balances and profits to induce additional deposits and to forestall withdrawals (examples captured in dated screenshots to be filed under seal);

- wiring instructions transmitted across state lines directing Plaintiff to route funds to accounts at Deutsche Bank Trust Company Americas (New York, NY), Bank Irvine (Irvine, CA), TD Bank, N.A. (New Jersey), and International Bank of Chicago (Illinois);

- the actual transmission of interstate wire transfers from Plaintiff's accounts at SoFi, N.A., and other institutions to the recipient bank accounts (the fourteen transfers, with dates, sending and receiving institutions, recipient names, and amounts, summarized and to be filed under seal); and

- follow-on interstate communications demanding further deposits to release Plaintiff's own funds, under false pretenses of "escrow," "tax," or "third-party approval" requirements.

34.    These acts were related in purpose, participants, results, and methods. They were neither sporadic nor isolated: the scheme spanned months, involved dozens of coordinated transmissions, and, by its nature and practice, poses a threat of continued racketeering conduct against other victims. The continuous operation of the LFC groups, the Chameleon site, and the money-mule accounts reflects both closed- and open-ended continuity.

### *Conduct of the Enterprise*

35.    Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3). Each Defendant conducted or participated, directly or indirectly, in the conduct of the Enterprise's

affairs, within the meaning of 18 U.S.C. § 1962(c), by designing, operating, promoting, directing, facilitating, or monetizing the fraudulent platform and the flow of funds, and by managing key functions (victim acquisition, scripted communications, account operations, and receipt and layering of victim funds).

### RICO Injury and Proximate Cause

36.     As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff suffered injury to his property within the meaning of 18 U.S.C. § 1964(c), including the loss of no less than $3,700,000 wired to Defendants in reliance on their misrepresentations and the scheme's deceptive design. Plaintiff's injuries were the intended and foreseeable result of the scheme; Plaintiff wired funds in reliance on Defendants' specific misrepresentations and fraudulent communications and was thereafter blocked from withdrawing his property. The causal chain is direct: the false statements and deceptive platform induced the wires; the target accounts received and retained the funds; Defendants refused to return them

### Causes of Action

### Count I: Violation of RICO, 18 U.S.C. § 1962(c) (All Defendants)

37.     Plaintiff incorporates the foregoing allegations. Defendants, associated with the Enterprise, conducted or participated in the Enterprise's affairs through a pattern of racketeering activity comprising multiple acts of wire fraud, in violation of 18 U.S.C. § 1343, thereby violating 18 U.S.C. § 1962(c). Plaintiff has been injured in his property "by reason of" Defendants' § 1962(c) violations and is entitled to treble damages, costs, and reasonable attorneys' fees under 18 U.S.C. § 1964(c).

### Count II: RICO Conspiracy, 18 U.S.C. § 1962(d) (All Defendants)

38.     Plaintiff incorporates the foregoing allegations. Defendants agreed to facilitate and did facilitate each other's scheme to violate § 1962(c). Each knowingly agreed to the commission

of predicate acts of wire fraud and to the conduct of the Enterprise's affairs through a pattern of racketeering. Defendants thereby violated § 1962(d). Plaintiff suffered injury to property by reason of the conspiracy and is entitled to treble damages, costs, and reasonable attorneys' fees.

### Count III: Fraud (Georgia Law) (All Defendants)

39.     Plaintiff incorporates the foregoing allegations. Defendants falsely represented material facts—including the legitimacy of the platform, the truthfulness of displayed balances and "profits," the existence of "escrow" and third-party approvals, and the necessity of additional deposits to release Plaintiff's funds—knowing their falsity and intending to induce reliance. Plaintiff justifiably relied and sustained damages exceeding $3.7 million. Plaintiff seeks compensatory and punitive damages under O.C.G.A. § 51-12-5.1.

### Count IV: Fraudulent Inducement (Georgia Law) (All Defendants)

40.     Plaintiff incorporates the foregoing allegations. Defendants intentionally misrepresented and concealed material facts to induce Plaintiff to open an account and to wire funds, including fabricated account outputs and pretextual "fee/tax/escrow" demands. Plaintiff reasonably relied on these misrepresentations and suffered damages as alleged.

### Count V: Conversion (Georgia Law) (All Defendants)

41.     Plaintiff incorporates the foregoing allegations. Plaintiff owns and has the right to immediate possession of his funds and digital assets. Defendants wrongfully assumed dominion over that property by receiving, blocking, and refusing to return the funds. Plaintiff seeks actual and punitive damages.

### Count VI: Constructive Trust and Equitable Restitution (All Defendants)

42.     Plaintiff incorporates the foregoing allegations. Defendants acquired and retained property traceable to Plaintiff's funds by fraud and other wrongful conduct. Equity requires imposition of a constructive trust over all identifiable funds, assets, and proceeds held by, for, or

14

traceable to Defendants, including at Deutsche Bank Trust Company Americas, TD Bank, N.A., Bank Irvine, International Bank of Chicago, and any successor or downstream accounts and wallets identified through discovery, together with equitable restitution and disgorgement.

### *Count VII — Possession of Stolen Property (Georgia Law)*

43.    The above factual allegations in this complaint are incorporated herein by reference as if set forth fully below.

44.    Defendants knowingly received, retained, or aided in the concealment of stolen property—Plaintiff's funds—contrary to Georgia law. Plaintiff pleads a civil claim under O.C.G.A. § 51-1-6 predicated on violation of duties imposed by Georgia's theft-by-receiving statute, including O.C.G.A. § 16-8-7, and seeks damages proximately caused by such violations.

### Prayer for Relief

45.    Plaintiff requests judgment against Defendants, jointly and severally, for (a) treble damages for RICO violations, 18 U.S.C. § 1964(c), together with costs and reasonable attorneys' fees; (b) compensatory and punitive damages on the Georgia-law claims; (c) equitable relief including imposition of a constructive trust over all funds and assets traceable to Plaintiff's wires and equitable restitution/disgorgement to restore the status quo ante; (d) pre- and post-judgment interest at the maximum rates allowed by law; (e) such further legal and equitable relief as the Court deems just and proper.

### Jury Trial Demand

46.    Plaintiff demands trial by jury on all issues so triable.

Dated: October 28, 2025

**SBAITI & COMPANY PLLC**

*/s/ George M. Padis*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**George M. Padis**
Texas Bar No. 24088173
**Griffin S. Rubin**
Texas Bar No. 2412809
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
    George.padis@sbaitilaw.com
    gsr@sbaitilaw.com

*Counsel for Srinivas Ginjupalli*

## VERIFICATION

I am the Plaintiff in the foregoing Complaint and am over the age of 18. I have personal knowledge of the facts set forth in the Complaint and declare that the allegations contained therein are true and correct to the vest of my knowledge, information and belief.

Executed on October 27, 2025, at Martinez, Georgia.

_____

Srinivas Ginjupalli

19